UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


STEPHANIE M. HILL
    Plaintiff

v.                                                                                                            No. 5:12CV-00072-R

MICHAEL ASTRUE
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the Court upon the Plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The Plaintiff is represented by Mark Pierce. The fact and law summaries of the Plaintiff and the Defendant are at Docket Entry No. (DN) 10 and 11, respectively. The Court has referred this matter to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636.

On August 12, 2011, administrative law judge (ALJ) Mary Lassy issued the final decision of the Commissioner denying the Plaintiff's disability claim. Administrative Record (AR), pp. 25-42. For the reasons below, the Magistrate Judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the Plaintiff's complaint be DISMISSED.

**The ALJ's Decision**

The ALJ denied the Plaintiff's disability claim at the fifth and final step of the sequential evaluation process based upon testimony from a medical expert (ME), Tom Wagner, Ph.D., and a vocational expert (VE), Stephanie Barnes, Ph.D. The VE testified that an individual having the mental limitations opined by the ME and who is limited to medium, light, and/or sedentary work

would retain the ability to perform a significant number of jobs in the national economy (AR, pp. 69-71).  The ALJ accepted the ME's opinion, found that the Plaintiff has a residual functional capacity (RFC) for light work, and, based on the VE's testimony, concluded that the Plaintiff can perform jobs such as light officer helper, mail clerk, and housekeeper (AR, pp. 29, 40, and 41).

Upon judicial review, the Plaintiff presents two major contentions (1 and 2) and seven minor ones (3 through 9).

## Argument 1:  Dr. Malla's Assessment

On July 6, 2011, the Plaintiff's treating pain management specialist, Yogesh Malla, M.D., completed the Medical Assessment of Ability to Do Work-Related Activities (Physical), finding, among other things, that the Plaintiff can lift / carry no more than 10 pounds occasionally and none frequently and is limited to 4 hours of sitting and 1 hour of standing / walking (total per 8-hour workday) (AR, p. 700).  The VE testified that acceptance of Dr. Malla's Assessment would render the Plaintiff unemployable because it allows for no sustained lifting / carrying and the total of sitting, standing, and walking is "less than a full time work day" (AR, p. 71).

The Plaintiff argues that the ALJ erred in declining to give controlling weight to Dr. Malla's disabling assessment rather than accept it to the extent it is compatible with the requirements of light work.

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R.  § 404.1567(b).  The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time.  Social Security Ruling (SSR) 83-10 at *6.

A treating source's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

When asked "[w]hat are the medical findings that support this assessment?" Dr. Malla responded in non-specific terms, referring to the treatment record and his comprehensive initial evaluation (AR, pp. 700-701):

> Please see our Pain Management Center of Paducah records for particular findings, including those noted in the comprehensive initial evaluation of 8/13/10 and the various x-ray scans. Positive exam findings and x-ray findings are consistent with Ms. Hill's complaints and chronic pain. Tenderness, spasm, reduced ranges of motion in the cervical and thoracic spine. Multiple chronic cervical and lumbar spine problems with additional diagnoses as noted in our records. ... Chronic pain; spinal and knee problems.

"[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988). Dr. Malla's assessment is not entitled to controlling weight because his statement of supportive findings, which merely refers to the treatment record, is conclusory and unsupported by sufficient objective clinical findings.

Nevertheless, the Court will consider those portions of the treatment record which the Plaintiff alleges support Dr. Malla's assessment. In her fact and law summary, the Plaintiff focuses upon Dr. Malla's early impressions based upon gross physical examination, recorded in his comprehensive initial evaluation of August 13, 2010, including lumbar facet joint arthropathy, cervical facet joint arthropathy, and osteoarthritis of knee (AR, p. 586).

Dr. Malla's plan at the time he recorded these impressions was to obtain CT scans of the cervical and lumbar spine (AR, p. 586). The subsequent scans revealed that the arthropathy was "mild," and a bilateral knee x-ray showed "no obvious osteoarthritis" or other "acute process" (AR,

pp. 505-507). Dr. Malla's own post-imagining notes recognize that the arthropathy is "mild" and that there is no obvious osteoarthritis of the knees (AR, p. 651).

The ALJ did not err in declining to give controlling weight to Dr. Malla's findings that would preclude light work, in part, because "[s]ubsequent diagnostic images revealed only mild degenerative arthropathy in the cervical spine, mild stenosis and arthropathy in the lumbar spine, and no bilateral knee abnormalities" (AR, p. 34).

### Argument 1:  *Williams* and *McDaniels* Distinguished

The Plaintiff relies on two prior recommendations from this Court to support her first argument, both adopted by the district court: *Williams v. Commissioner*, No. 5:11-CV-00126-R (Magistrate Judge Lanny King) and *McDaniels v. Commissioner*, No. 5:02-CV-00040-J (Magistrate Judge W. David King).

In *Williams*, this Court concluded that the facts of the case were not meaningfully distinguishable from *Johnson v. Commissioner*, 652 F.3d 646 (6th Cir.2011).  In these cases, pain management specialist Emily Rayes-Prince opined a disabling upper extremity limitation, and the ALJ rejected her opinion in favor of the opinion of the non-examining state agency program physician. Unlike Dr. Malla's assessment, which would not permit any full-time work, Dr. Rayes-Prince's opinion of upper-extremity limitations was supported by specific clinical findings.

In *McDaniels*, this Court found that the ALJ's rejection of the treating physician's opinion was tantamount to "playing doctor" because the ALJ disagreed with the treating physician on the interpretation of specific clinical findings (DN 10-2, p. 12):

> [The treating physician] and the ALJ looked at essentially the same radiological and other medical test results. [The treating physician] found that they lead to the restrictions he identified. The ALJ found to the contrary. The difference was essentially one of medical opinion.

4

The "playing doctor" prohibition comes into play when the ALJ "either reject[s] a doctor's medical conclusion without other evidence [or] draw[s] medical conclusions [herself] about a claimant without relying on medical evidence." *Armstrong v. Barnhart*, 287 F.Supp.2d 881, 887 (N.D.Ill.2003).

The ALJ is charged with the responsibility of weighing every medical opinion of record. See 20 C.F.R. § 404.1527 (rules for weighing medical opinions). Here, the ALJ accepted Dr. Malla's opinion to the extent it permitted light work and, in so finding, gave "considerable weight" (AR, p. 40) to the opinion of the program physician, David Swan, and gave diminished weight to Dr. Malla's opinion because "[s]ubsequent diagnostic images revealed only mild degenerative arthropathy in the cervical spine, mild stenosis and arthropathy in the lumbar spine, and no bilateral knee abnormalities" (AR, p. 34). Unlike the ALJ in *McDaniels*, the ALJ did not simply contradict an uncontradicted medical opinion based on her own medical "expertise."

### Argument 2: Dr. Cox's Statement

On August 4, 2011, after the administrative hearing on July 14, 2011, the Plaintiff's treating psychotherapist, Dr. Charles L. Cox, LMFT (licensed marriage and family therapist), completed the Medical Source Statement of Ability to Do Work-Related Activities (Mental). Dr. Cox found that the Plaintiff is "extremely" limited in 11 of 20 functional areas and "seriously" limited in the remaining areas (AR, pp. 729-730).

The Plaintiff acknowledges that Dr. Cox "is not considered a medical expert [i.e., an "acceptable medical source" or "licensed or certified psychologist" as contemplated by 20 C.F.R. § 404.1513(a)(2)] and thus his opinions could not be given 'controlling' weight" (DN 10, p. 6). Dr. Cox is an "other source" within the meaning of § 404.1513(d). The Plaintiff contends that the ALJ

"failed to properly weigh" Dr. Cox's other-source statement (p. 6).

An ALJ is obliged to weigh acceptable medical source opinions in light of the factors listed at 20 C.F.R. §§ 404.1527(c)(1) through (6): examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. An ALJ "must consider" these same regulatory factors in weighing opinions from other sources and "generally should explain the weight given to the opinions from these 'other sources'" in her written decision. Social Security Ruling (SSR) 06-03p at *6.

The foregoing language has generated some controversy among the courts within this Circuit as to the degree of explanation required in the ALJ's written decision with respect to the weighing of an other-source opinion. See *Southward v. Commissioner*, 2012 WL 3887212 (E.D.Mich.) (collecting authorities representing the various approaches).

Unlike many of the cases discussed in *Southward*, in which the ALJ either completely ignored or gave short shrift to the other-source opinion, the ALJ in this case discussed Dr. Cox's opinion in considerable detail. See AR, pp. 32, 33, 37, 39, and 40. The ALJ's decision reflects an adequate consideration of Dr. Cox's statement. In addition, as in *Southward*, supra, even if the ALJ technically erred in failing to address each regulatory factors, any error was harmless inasmuch as the Plaintiff has not shown a reasonable probability that an explicit analysis would have resulted in a finding that she has mental limitations in excess of those opined by the ME.

## Arguments 3 through 9

The Plaintiff's third argument is that a remand is required because, as in *Williams* and *Johnson*, supra, the program physician merely signed off on a form prepared by the state agency decisionmaker. Admittedly, this case is like *Johnson* in that one "cannot help but note that the

administrative record reflects that [the program physician] did not reach [his] conclusion[s] independently; he was provided with a completed residual functional capacity test and asked to sign it [by the state agency decisionmaker] 'if [you] agree with assessment.'" *Johnson* at 650; compare AR, p. 609 ("[i]f you agree, please sign RFC"). In so noting, *Johnson* implied that, ideally, the physician would have completed the form himself. However, judicial review does not contemplate a question for administrative perfection. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989). *Johnson* did not indicate that this deviation from perfection independently constituted a reversible error, and the Court is unaware of any such authority.

The Plaintiff's fourth contention is that a remand is required pursuant to *Ealy v. Commissioner*, 594 F.3d 504 (6th Cir.2010) because the state agency found that she can sustain concentration for "2 hour segments over an 8 hour workday" (AR, p. 147) and this limitation was not included in the controlling vocational hypothetical. *Ealy* is inapposite because the ALJ found that Ealy was limited to 2-hour segments of concentration but failed to include the restriction in the hypothetical. Here, the ALJ made no such finding but rather adopted the assessment of the ME, which included no such limitation.

The Plaintiff raises three issues regarding her mental impairments and limitations: The ALJ failed to make a sufficiently-detailed, function-by-function mental RFC finding (5), failed to take into account the combination of mental and physical symptoms on her pain perception (6), and failed to acknowledge post-traumatic stress disorder (PTSD) as a severe impairment (7). The Plaintiff has failed to show that the ALJ's acceptance of the ME's evaluation of her mental impairments and limitations was legally inadequate.

The Plaintiff argues that the ALJ, unlike Dr. Malla, failed to take into account exacerbation of pain due to obesity (8). She has not shown that her obesity precludes light work.

Finally, the Plaintiff argues that the proper remedy in this case is a judicial payment of benefits (9). The Court does not reach this issue because the ALJ's decision should be affirmed.

## RECOMMENDATION

The Magistrate Judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the Plaintiff's complaint be DISMISSED.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b), any party shall have a period of fourteen (14) days, including intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a)(1)(B), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period. Fed.R.Civ.P. 6(d) and 5(b)(2)(E).

The original objections shall be sent to the Clerk of Court either electronically or by mail. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).